**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Miami Division)**
**www.flsb.uscourts.gov**

In Re:

Silvia Helena Roberts, Case No. 25-13601-CLC

Debtors, Chapter 13
_______________________________________/

**CREDITOR EVE MARIE STORM JOHNSON**
***OBJECTION TO CLAIM OF EXEMPTIONS (ECF NO. 23)***

Eve Marie Storm Johnson ("**Creditor**"), by and through undersigned counsel, files this Objection to Exemptions (ECF No. 23), and in support states as follows:

## FACTUAL BACKGROUND

### I. The Debtor's 1st Bankruptcy 522(p) Limitation and Dismissal

1. On January 5, 2023, Leslie Howard Roberts and Silvia Helena Roberts (the "Roberts" and the "Debtor" when referring to Silvia) filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code. (23-10086-RAM ECF No. 1) (the "1st Bankruptcy").

2. On January 19, 2023, the Roberts filed their schedules together with a statement of financial affairs. (23-10086-RAM ECF No. 13).

3. Among other exemptions, the Roberts claim a homestead exemption in real property located at 495 Brickel Ave #622, Miami, LF 33131 which appears to be a typo and the correct unit is 495 Brickel Ave Bay607, Miami, LF 33131 (the "Condo") (23-10086-RAM ECF No. 13 at p. 10).

4. The Condo was purchased on or about August 16, 2021. A copy of the deed is attached hereto as **Exhibit "1."**

5. The Trustee in the 1st Bankruptcy objected to the claim of exemptions as to the homestead based on section 522(p) of the Bankruptcy Code due to the purchase occurring in 2021. (23-10086-RAM ECF No. 25). The Creditor joined in that objection and identified certain additional facts:

a. In the 1st Bankruptcy the Roberts ascribed a value of $552,023.00 to the Condo; however, the 2021 sale was for $710,000.00 as reflected in **Exhibit "1."**

b. The purported mortgage was $523,800.00 (23-10086-RAM ECF No. 13 at p. 13).

6. 11 U.S.C. 522(p) during the 1st Bankruptcy Case capped exempt equity on a home acquired within 1,215 days at $189,050.00.

7. Accordingly, there were

8. In the 1st Bankruptcy Case, the Roberts confirmed plan was a 100% payment plan to unsecured creditors based on the need to pay for the non-exempt portion of the Condo. (23-10086-RAM ECF Nos. 108, 113, 123, and 129)

9. On January 23, 2025, the Roberts 1st Bankruptcy Case was dismissed due to failure to make payments under the Ch. 13 plan. (23-10086-RAM ECF No. 136).

## II. The Debtor's 2nd Bankruptcy

10. On April 1, 2025, Leslie Howard Roberts and Silvia Helena Roberts filed separate Ch. 13 bankruptcy cases (ECF No. 1).

11. On May 7, 2025, Leslie Howard Roberts bankruptcy case was dismissed for failure to cure several deficiencies, including not filing schedules. (25−13600−CLC ECF No. 23). Mr.

Roberts did not file schedules after he was indicted for wire fraud and money laundering for allegedly selling forged art[1] – which is the basis for the debt owed to Creditor.

12. On April 29, 2025, the Debtor filed here schedules. (ECF No. 23).

13. The Debtor asserts in her sworn schedules that the Condo is worth $761,800.00 (ECF No. 23 at p. 3) with a mortgage of $510,000.00 (ECF No. 23 at p. 11). But the Condo is listed for sale $1,149,000.00. A copy of the Redfin Listing is attached as **Exhibit "2."**

## Legal Argument

14. 11 U.S.C. 522(p) limits the exemption for homestead protections under certain circumstances where it states:

> (p)(1)Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000[2] in value in—
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> (B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> (C) a burial plot for the debtor or a dependent of the debtor; or
> (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

522(p)(1)(A)-(D).

15. Here, the Debtor's equity in the Condo exceeds the $214,000 limit under 11 U.S.C. 522(p) under any scenario:

---

[1] https://www.justice.gov/usao-sdfl/pr/coconut-grove-fine-art-dealer-indicted-federal-case-charged-wire-fraud-conspiracy-and

[2] Adjusted annually and current $214,000.00. https://library.nclc.org/article/april-1-increase-federal-bankruptcy-exemptions-other-dollar-amounts-0#:~:text=The%20cap%20on%20homestead%20property,3.4.

| **Valuation** | **Mortgage** | **Debtor's Equity** |
|---|---|---|
| Debtor's Sworn Schedules: $761,800.00 | $510,000.00 | $251,800.00 |
| Debtor's Listing of Condo: $1,149,000.00 | $510,000.00 | $639,000.00 |

16. The Court followed 11 U.S.C. 522(p) in the 1st Bankruptcy Case when it capped exempt equity on the home acquired within 1,215 days at $189,050.00. Subsequently, the payment plan was agreed upon and authorized by the court in reliance on Debtor's promise to pay unsecured creditors based on the need to pay for the non-exempt portion of the Condo. The Debtor received the benefit of the automatic stay during this period.

17. In *In re Auyeung*, No. BAP EC-14-1382, 2015 WL 3609301 (B.A.P. 9th Cir. June 9, 2015), the debtor attempted to avoid creditor claims by claiming the Homestead Exemption, which was eventually given to a portion of the value of the property. The court confirmed debtor's payment plan which provided that the property shall be sold and the non-exempt proceeds from the sale would go to pay certain creditors. *Id*. Then the debtor fell behind on payments under the plan and did not take steps to sell the property, so the case was converted to chapter 7. *Id*. At the discharge of the chapter 7 case, the debtor initiated a new chapter 13 case wherein they reasserted the homestead exemption for different amount in an attempt to avoid the creditor claims further. *Id*. The court found that the equitable doctrine of judicial estoppel encompasses this very situation and stated that they must preserve the integrity of the judicial process. *Id*. In their view, the debtors clearly were attempting to abuse the process by filing a sham Chapter 13 plan and avoiding the lien and found that the debtors were not entitled to reap the benefits of an increased exemption and

therefore avoiding more of the creditors['] lien based on their prior bad faith. *Id*. The court found that debtors intentionally and willfully misrepresented to this court the terms of their Chapter 13 Plan, the court relied on their statements under penalty of perjury in confirming the Chapter 13 Plan in the prior case, and through their misrepresentations, the debtors managed to confirm a plan and exhaust four years of judicial time and resources. *Id*. According to the court's reasoning, the subsequent Chapter 13 case was one more step by the debtors in their plan to delay, abuse (both the creditors and the court), avoid performing, not following through with the obligations of a Chapter 13 debtor, and taking what they want, when they want it. *Id*.

18. The situation in instant matter is substantially similar. Debtor here attempted to claim Homestead Exemption, the Court exempted a portion and the non-exempt portion was to go to pay creditors, the payment plan was confirmed to that end, and Debtor defaulted for non-payment per the plan. The 1st Bankruptcy Case was dismissed, Debtor filed the 2nd Bankruptcy Case in bad faith and now attempts to abuse the process by its filing the 2nd Bankruptcy Case and seeking to avoid Creditor's claims it agreed to pay in the 1st Bankruptcy Case. As such, the equitable doctrine of judicial estoppel encompasses this very situation and this court should likewise preserve the integrity of the judicial process by precluding Debtor from reclaiming the Homestead Exemption in a greater amount.

19. "Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." *Cheng v. K & S Diversified Invs., Inc. (In re Cheng),* 308 B.R. 448, 455 (9th Cir.BAP2004), *aff'd,* 160 Fed.Appx. 644 (9th Cir.2005). "A court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because

of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.' " *Hamilton v. State Farm Fire & Cas. Ins. Co.,* 270 F.3d 778, 782 (9th Cir.2001). To that end, the Ninth Circuit has routinely inquired into the intent of the party asserting an inconsistent position in cases outside of the bankruptcy context. "Judicial estoppel applies when a party's position is 'tantamount to a knowing misrepresentation to or even fraud on the court.' " *Johnson v. State of Or.,* 141 F.3d 1361, 1369 (9th Cir.1998).

20. "[A] party puts the integrity of the judicial process at risk not only when it knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." *Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust),* 634 F.3d 678, 696 (2d Cir.2011). "[T]he proper focus is on the objective conduct of a party or its counsel." *Id.* "[I]n considering whether to apply judicial estoppel a court must focus on the conduct of the party to be estopped, not the party seeking estoppel." *Id.* at 698. "[A]lthough a court is unlikely to be asked to apply judicial estoppel when no party has been prejudiced, it is unfair **advantage** to the potentially prejudiced party's adversary that is the touchstone of the doctrine." *Id.* at 698–99 (emphasis in original).

21. As an equitable doctrine, judicial estoppel is not easily defined. However, three factors are relevant to its application. *Hamilton,* 270 F.3d at 782–83 (citing *N.H. v. Maine,* 532 U.S. 742, 750 (2001)). First, a party's position in the second matter must be "clearly inconsistent" with it's position in the first matter. *Id.* at 782. Second, a court must have accepted the party's earlier position. *Id.* at 782–83. The third consideration is whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 783.

22. On review in *Auyeung*, the appellate court turned to the three factors that guide application of judicial estoppel, and concluded that they are all met. *Id*. As to the first factor- inconsistent positions- the court held that debtors' position in their subsequent case seeking a greater exemption and avoidance of the creditor claims was inconsistent with their earlier position that they would sell the property to pay off the remaining balance on creditors' lien. *Id*. The appellate court reasoned that by representing that they would sell the property, debtors left the bankruptcy court and creditors with the distinct, and false, belief that debtors would follow through with the sale. *Id*. Further, it was this representation that led to confirmation of debtors' fourth amended chapter 13 plan. *Id*. Yet, the record showed that after confirmation of their plan, debtors never took any steps to market or sell the property. *Id*. The appellate court held that debtors' conduct was thus inconsistent with their representations to the bankruptcy court that they would sell the property by a certain date. *Id*.

23. Likewise, in the case at hand, the first factor - inconsistent positions- is met. Debtor's position in the 2nd Bankruptcy Case is inconsistent with their position in the 1st Bankruptcy Case that they would take the non-exempt portions of the Condo towards the confirmed 100% payment plan and pay off Creditor's claims. By representing that the non-exempt portion of the Condo would go to satisfy the Creditor's claims under the payment plan, Debtor left the bankruptcy court and Creditor with the distinct, and false, belief that debtors would follow through with the payment plan. It was this representation that led the Court to confirm the plan. In defaulting on the payment plan, Debtor's conduct was inconsistent with their representation to the court. Additionally, Debtor's attempts to seek a higher exemption and avoid paying Creditor's claims is inconsistent with their representation to the court in the 1st Bankruptcy Case. Accordingly, the first factor is met.

24. Back to *Auyeung*, the second criterion for judicial estoppel—that the earlier position has been adopted in some manner by the court— was easily satisfied, as debtors' representation that they would sell the property and pay off creditors' lien was critical to the bankruptcy court's willingness to confirm debtors' fourth amended plan. *Id*. The bankruptcy court adopted debtors' former position and accepted the accuracy of their representation that they would sell the Property. *Id*.

25. The same occurred in this case, as Debtor's representations that they would pay 100% of Creditor's claims through the non-exempt portion of the Condo was critical to the Court confirming the plan. The Court adopted Debtor's former position and accepted the accuracy of their representation. Thus, the second factor is easily met.

26. Finally, in *Auyeung*, the court analyzed the third requirement that is said to be the touchstone of the judicial estoppel doctrine—the unfair advantage to the potentially prejudiced party's adversary— which was also met. *Id*. The record showed that debtors would gain a significant unfair advantage if allowed to further litigate the lien avoidance issue in this case after obtaining confirmation of their prior chapter 13 plan by misrepresenting that they would sell the property by a certain date and pay off creditors' lien. *Id*. Debtors deceived the bankruptcy judge who relied on their misrepresentation in deciding to confirm a plan which they never intended to honor. *Id*.

27. In this case Debtor would similarly gain a significant unfair advantage if allowed to further litigate the Homestead Exemption and avoidance issue after obtaining confirmation of their prior chapter 13 plan by misrepresenting that they would pay 100% of the Creditor's claims using the non-exempt portion of the Condo. Debtor deceived the Court who relied on her misrepresentation in deciding to confirm a plan which Debtor failed to honor.

28. The Court's decision on the Homestead status in the 1st Bankruptcy Case, the agreed upon 100% payment plan to unsecured creditors based on the need to pay for the non-exempt portion of the Condo, and the dismissal of the 1st Bankruptcy Case due to Debtor's own default under the plan precludes Debtor from attempting to benefit from it this time around in a manner that would undermine the court process and prejudice Creditor. Accordingly, all three factors are met and Debtor should be judicially estopped.

29. Further, the prior findings in the Debtor's 1st Bankruptcy Case which relied upon the 522(p) objection as part of the plan confirmation is binding in the Debtor's 2nd Bankruptcy Case.

30. "By common law and by *Fed.R.Civ.P.* 41(b), involuntary dismissal (unless the court otherwise specifies) generally bars as res judicata any subsequent relitigation by the parties of the issues presented in the dismissed action. *In re Damien*, 35 B.R. 685 (Bankr. S.D. Fla. 1983). There are three exceptions: dismissal for lack of jurisdiction, for improper venue, or for failure to join a necessary party. *Costello v. United States,* 365 U.S. 265, 286 (1961); Wright & Miller, *Federal Practice and Procedure* : Civil § 2373." It would be anomalous if a completely different rule were intended in bankruptcy. *See In re Damien*, 35 B.R. 685 (Bankr. S.D. Fla. 1983).

31. When the time in which the Debtor was previously in bankruptcy tolls the 1215 day clock (due to the automatic stay from the 1st Bankruptcy and the confirmed plan), the Debtor acquired the interest in the Condo fewer than 1215 days ago:

| | |
|---|---|
| Condo Purchased | August 16, 2021 |
| 1st Bankruptcy Petition Date | January 5, 2023 |
| Number of days between purchase and 1st Bankruptcy | 507 |
| 1st Bankruptcy Dismissed | January 23, 2025 |

| | |
|---|---|
| 2nd Bankruptcy Filed | April 1, 2025 |
| Days between 1st Bankruptcy and 2nd Bankruptcy | 68 |
| **Total Non-Tolled Days Between Purchase and 2nd Bankruptcy** | 575 |

32. Here, the Debtor's exempt equity should be capped at $214,000.00 pursuant to 522(p).

## CONCLUSION

The Court should sustain the objection as set forth above. Creditor reserves the right to amend and supplement this objections upon completion of discovery and investigation.

WHEREFORE, Creditor respectfully requests the Court sustain the objection; and grant any further relief the Court deems appropriate.

Respectfully submitted this June 4, 2025.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2025, I electronically filed this document with the Clerk of Court using CM/ECF. I also certify that the document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**BEIGHLEY, MYRICK, UDELL, LYNNE & ZEICHMAN, PA**
*Attorneys for Creditor*
2385 Executive Center Drive, Suite 300
Boca Raton, FL 33431
Phone: 561-549-9036
Fax: 561-491-5509
tzeichman@bmulaw.com
By: /s/ Thomas G. Zeichman
THOMAS G. ZEICHMAN
Florida Bar No. 99239
JOEL E. LEDEZMA
Florida Bar No. 1049237